UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/5/2020

------------------------------------------------x

UNITED STATES OF AMERICA

V.                                                                        S7 10 CR 391-64 (CM)

CHARLES CORIN,

        Defendant.

------------------------------------------------x

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, C.J.:

Corbin pleaded guilty to Counts Two and Seventeen of the S7 superseding indictment, which charged Corbin with, respectively: participating in a racketeering conspiracy—the Newburgh Bloods—in violation of 18 U.S.C. § 1962(d); and participating in a conspiracy to violate the laws of the United States—in particular, to distribute and possess with intent to distribute 280 grams and more of crack cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1) & (b)(1)(A)—in violation of 21 U.S.C. § 846. As part of the plea agreement Corbin entered into with the Government, Corbin admitted to (i) his membership in the "Bloods" enterprise in Newburgh, New York, and (ii) his participation in the acts set forth in the Indictment as Count One, Racketeering Acts Four (attempted murder [of David Freeman]), Six (attempted murder [of Crips, resulting in the shooting of Andrea Purvis in the face]), and Ten (narcotics conspiracy). (Plea Agreement 1 n.1).

On April 18, 2013, the Court sentenced Corbin to a 144 months' imprisonment. Corbin is currently serving his sentence at Fort Dix FCI—his projected release date is December 3,

1

2021.

Before the Court is Corbin's motion for compassionate release filed pursuant to 18

U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), P.L. 115-391. Corbin

claims that he should be granted compassionate release because: (1) he has bronchitis making

him vulnerable to COVID-19, which he claims has run rampant in the Bureau of Prisons; and (2)

he needs to take care of his son, whom "given his [] age and stage of life, it has become critical

that [] he see his father on a regular, constant, and personal basis." (Motion 1).

The Government opposes Corbin's motion arguing that (1) he has failed to establish

extraordinary and compelling reasons for compassionate release, (2) a reduction in sentence

would not be consistent with the applicable Section 3553(a) factors, and (3) he continues to pose

a danger to society.

The motion is denied.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment

once imposed, except under limited circumstances. Once such circumstance is the so-called

compassionate release provision, which provides that a district court "may reduce the term of

imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i).

A motion under this provision may be made by either the Bureau of Prisons or a defendant, but

in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal

a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30

days from the receipt of such a request by the warden of the defendant's facility, whichever is

earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a

defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

Once a defendant has exhausted administrative remedies, with respect to the substantive determination, and in addition the statutory requirement that the Court consider the factors set forth in Section 3553(a), the United States Sentencing Guidelines contain a provision, Section 1B1.13, applicable to motions for sentencing reductions pursuant Section 3582(c)(1)(A). That section provides, in relevant part, that a reduction in sentence may be appropriate if the Court determines that--

(1)    (A) Extraordinary and compelling reasons warrant the reduction; or

        (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2)    The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3)    The reduction is consistent with this policy statement. U.S.S.G. § 1B1.13.

Here, Subsection (1)(B) is inapplicable. With respect to subsection (1)(A), which relates to "extraordinary and compelling reasons" warranting a reduction, the Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See id.* § 1B1.13 comment (n.1). The relevant Notes read as follows:

(A)    **Medical Condition of the Defendant.**—

    (i)    The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

    (ii)    The defendant is—

3

(I)     suffering from a serious physical or medical condition,

(II)    suffering from a serious functional or cognitive impairment, or

(III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1(A)).

(C) **Family Circumstances**.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

*Id.* § 1B1.13 comment (n.1(C)).

As the proponent of the Motion, Corbin bears the burden of proving that "extraordinary and compelling reasons" exist and that he is entitled to the relief he seeks. *See, e.g., United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

It is important to note that a defendant who meets all the criteria for compassionate release consideration listed above is not thereby automatically entitled to a sentence modification. He is simply eligible for a sentence modification. The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

Corbin's Motion in the Bureau of Prisons

Corbin wrote to the warden of his facility on May 18, 2020, asking the warden to move to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Corbin argued that there were two "extraordinary and compelling reasons" for his release: "COVID-19 pandemic and death of family member caregiver (my son's mother in 2013 …)." Corbin elaborated on his COVID-19-based argument:

> The extraordinary and compelling circumstances which could not have been reasonably foreseen by the court at the time of sentencing i[s] the outbreak of the deadly C[o]ronavirus (COVID-19) which was declared a global pandemic and also national emergency by President Trump. According to the CDC, I am especially vulnerable to contracting the virus as I suffer from chronic bronchitis, and upper respiratory infections due to a 2007 stab wound which left me with a collapsed lung. …

On June 22, 2020, the BOP denied Corbin's request, noting that he had failed to submit a death certificate for his son's mother, documentation that he was his son's actual father, documentation containing the name and age of his son, and a release plan including demonstration of housing and financial means to care for his son.

Accordingly, Corbin has exhausted his administrative remedies with the BOP, and his present motion for compassionate release is properly before this Court.

Corbin's Motion Before this Court

Corbin's has presented no basis to grant him compassionate release based on his medical circumstances, as defined in § 1B1.13 comment (n.1(A)). At the time of his sentencing, Corbin reported that he had been stabbed in the back by his son's mother, but, nonetheless, "he [was] in good health, does not have a history of health problems, has never been hospitalized and is not currently taking medication." (PSR ¶¶ 93–94). The only mention in his Bureau of Prisons medical records that remotely suggest he ever had any type of breathing issue is an entry from

November 11, 2016, indicating Corbin presented at the health services clinic with "Tonsilar Exudate, Erythema, Swelling . . . Erythema, White Plaques . . . acute upper respiratory infection, unspecified"— in common parlance: "a head and chest cold." He was treated with amoxicillin and the condition resolved.

The Court notes that an April 13, 2018 entry in Corbin's medical records indicates that tests showed that Corbin was prediabetic and received counseling on how to stave off the onset of diabetes. This is relevant to the present motion because the CDC has indicated that persons with diabetes are more vulnerable to suffering severe outcomes if infected with COVID-19, and therefore, should take enhanced precautions to guard against contracting the virus. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. But, of course, Corbin's tests results found that he was only *pre*diabetic, not diabetic.

At bottom, Corbin does not suffer from any of the medical conditions that would cause the Court to even contemplate granting him compassionate release on medical grounds. The Court would make this finding even if Fort Dix FCI was a COVID-19 hotspot, which it is not.[1]

Nor does Corbin's family circumstances—the desire to be a presence in the life of his son—warrant the granting of compassionate release, as define in § 1B1.13 comment (n.1(C)).

It is a tragic story. Several months after Corbin was sentenced in 2013, his former partner and the mother of his son, Tiffany Lasane, died in a terrible car accident. I remember Ms. Lasane. She and Corbin's son were in Court on the day Corbin was sentenced— it was apparent that Corbin was involved in his son's life. I actually remarked on the sorry fact that Corbin will

---

[1] A review of the BOP COVID-19 Dashboard for September 30, 2020 indicates that since the inception of the Pandemic, 19 inmates have tested positive for the virus, and that currently there are three inmates who have tested positive.

have to parent the son he loves so much, from afar: "That little boy will be a young man. You need to make him proud. You can do that even from the inside of a federal prison. You can. And you can set him an example and you can be a father to him, and you can tell him what's wrong and what's right and you can pray for him. And I hope that you will do all of those things. I hope you will have a chance to do all of those things." (*See* Sent. Tr. 26).

Corbin's son was placed in the care of Corbin's sister, Arreda Cotton. Ms. Cotton continues to care for her brother's son; now a 16 years old, young man. While Corbin has—as he said he would, and as the Court had hoped—maintained a relationship with son during his time incarcerated, Corbin says that type of relationship is no longer tenable, now that his son is older. "It has become critical that the son see his father on a regular, constant, and personal basis." Corbin says that "his son has reached a point where he is suffering, as many teenagers do, in dealing with life, which has only been exacerbated by the COVID-19 pandemic," and that he "desperately needs his father." (Motion 1-2).

Corbin's desire to be with his son is natural, understandable, indeed laudable, but not a basis to grant him compassionate release. The tragic death of Ms. Lasane did not leave Corbin's son without a caretaker; to the contrary, his son's aunt has been taking care of his son for the past seven years. Nothing in the record suggests that she has been anything but a responsible and loving surrogate parent, or that she plans to abandon the young man. In fact, Corbin's release plan suggests that even if Corbin were released, the boy would continue to live with Ms. Cotton as the primary caretaker, while Corbin takes up residence with his aunt, Ramona Burton, and "be available to visit with his son on a regular basis." (Motion 5).

Corbin cites no law—nor can he—that stands for the proposition that a desire to be in your child's life constitutes an extraordinary and compelling reason for reduction of sentence. It

simply stands to logic that, if wanting to be with your children constituted an extraordinary and compelling reason for a reduction of sentence, almost every defendant would qualify. The exception would swallow the rule.

As I said at sentencing, Corbin presented a difficult case. On one hand, he was before the court for serious crimes: dealing drugs and involvement in violent gang activity, at times while on probation from previous convictions. On the other hand, he had a dreadful childhood, including the death of his father and his being raised by a mother with severe mental illness. Perhaps the most significant factor, in terms of mitigation, Corbin had been inactive in gang activities for at least 2 years prior to his arrest, had started a family, and had a good paying job with a supervisory position. He had clearly begun to turn his life around. The Government argued for a guideline sentence of 168 months, the defense for the mandatory minimum of 120 months. Weighing the contradiction of a man before me, I "split the baby," granted a downward variance, and sentenced him to 144 months. (*See* Sentencing Transcript, ECF Document 1186).

Corbin argues that his good behavior while incarcerated—and he has indeed been an exemplary prisoner[2]—augers in favor of his release. Unfortunately, good behavior is not, by itself, a basis to grant compassionate release pursuant to 18 U.S.C. §3582(c) (*see* USSG § 1B1.13, Application Note 3; *see also United States v. Phillips*, 94 Cr. 631 (SHS), 2020 U.S. Dist. Lexis 117108) (rehabilitation is relevant and *in combination with other factors*, can constitute extraordinary and compelling factors); rather it is something the Court would be obliged to consider under 18 U.S.C. § 3553(a), if a defendant otherwise met his burden of demonstrating a

---

[2] To the Court's pleasure Corbin appears to still be on the path to rehabilitation that he had begun prior to being sent to prison in this case. In support of his motion, Corbin has offered testimonials—the likes of which I have seldom, if ever, seen—from various BOP supervisors, chaplains, social workers, and others, who have witnessed Corbin's good work and were willing to vouch for his character.

basis for release.  Since Corbin has not first demonstrated that he qualifies for compassionate

release under any of the enumerated criteria for compassionate release, his good behavior while

incarcerated ultimately does figure in the calculus.

The motion is denied.

This constitutes the decision and/order of the Court.

Dated: October 2, 2020

Colleen McMahon
Chief Judge

BY ECF TO ALL PARTIES